## AFFIDAVIT IN SUPPORT OF APPLICATION FOR COMPLAINT

I, Special Agent Eric Mercer, being duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have worked there since January 2020. I am currently assigned to the Bridgewater, Massachusetts, Field Office. Prior to my employment with the ATF, I was employed as a Trooper with the New Hampshire State Police from 2018 to 2020. As an ATF Special Agent, I have training and experience regarding investigations involving firearms and narcotics trafficking and the possession of firearms by prohibited persons, including felons, parolees, illegal aliens, narcotics users, and narcotics traffickers. I have additionally received training and experience conducting investigations involving the possession and use of firearms in violent crime and narcotics offenses. As a result of my training and experience, I am familiar with methods commonly utilized by firearms and narcotics traffickers, as well armed offenders, in conducting their business.

2. I have participated in various aspects of firearms and narcotics investigations, including physical surveillance, surveillance of controlled purchases involving undercover agents and/or cooperating witnesses, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and the debriefing of defendants, informants, and witnesses who had personal knowledge regarding firearms and narcotics trafficking organizations.

3. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.

1

4. This affidavit is being submitted in support of an application for arrest warrant for Talles PROVETTE DE FARIA for various violations of federal law including: (1) engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A); (2) conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371; and (3) distribution of fentanyl in violation of 21 U.S.C § 841(a)(1).

5. During this investigation, a Cooperating Witness ("CW-1") made controlled purchases of commercially manufactured firearms and ammunition as well as Privately Made Firearms ("PMF"), sometimes referred to as "ghost guns." A PMF does not have a serial number like commercially manufactured firearms. Based on my training and experience, a PMF satisfies the definition of "firearm" for the purposes of 18 U.S.C. § 922(a)(1)(A).

6. CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 [1]has provided accurate, truthful, and reliable information to law enforcement, including the ATF, in the past and continues to do so to the present. CW-1 is presently receiving monetary benefits from the ATF. CW-1 is also seeking protection from retaliation based upon CW-1's cooperation with law enforcement in this investigation, including possible relocation.

7. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from CW-1, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of supporting issuance of arrest warrant for PROVETTE DE FARIA, I have not presented every

---

[1] CW-1 has five (5) prior arrests in the Commonwealth of Massachusetts resulting in 14 entries on his Massachusetts Board of Probation summary. All prior arrests resulted in case dismissals. CW-1 additionally has previous arrests related to immigration offenses.

2

fact learned during the investigation, but only that information necessary to fully support probable cause for arrest warrants.

## **PROBABLE CAUSE**

8. On the evening of February 12, 2024, a Barnstable Police Department ("BPD") officer was working a plain-clothes duty assignment in the Town of Barnstable, while operating a fully functioning cruiser with emergency lights and sirens. At approximately 9:50 p.m., the officer observed a 2009 BMW X6 approach the intersection of Main Street and Center Street. The officer observed the vehicle to have no front license plate and the passenger side taillight was out. The officer subsequently initiated a motor vehicle stop in the vicinity of Main Street and Pearl Street.

9. The officer approached the vehicle and identified the driver, and lone occupant, as Talles PROVETTE DE FARIA. As a result of the motor vehicle stop, BPD confirmed PROVETTE DE FARIA did not possess an active driver's license and a tow was requested for the vehicle. Officers conducted a motor vehicle inventory prior to the tow and located a Pietro S.P.A Beretta, Model 85FS, .380 caliber pistol, serial number U03393Y, loaded with eight rounds of .380 caliber ammunition, in the seat back pocket of the driver's seat. After confirming PROVETTE DE FARIA did not possess a Massachusetts license to carry firearms, PROVETTE DE FARIA was placed under arrest. PROVETTE DE FARIA was transported to the Barnstable Police Department and advised of his rights per Miranda, in Portuguese.

10. At the Barnstable Police Department, a Portuguese speaking officer assisted in advising PROVETTE DE FARIA of his bail. During this time, PROVETTE DE FARIA advised the officer that he was aware that he was in possession of the firearm but did not realize it was illegal. PROVETTE DE FARIA told the officer that the firearm was found by a coworker on a

job site, who gave it to him to secure. PROVETTE DE FARIA told the officer that he had forgot that the handgun was still in the vehicle. As a result of the investigation, PROVETTE DE FARIA was charged with Motor Vehicle and Firearm Offenses out of the Barnstable District Court. PROVETTE DE FARIA was later released from custody.

### *APRIL 24, 2024 – CONTROLLED BUY FROM PROVETTE DE FARIA*

11. During March 2024, CW-1 informed agents that PROVETTE DE FARIA was involved in the possession and trafficking of firearms on and around the Cape Cod Massachusetts area. CW-1 further reported PROVETTE DE FARIA told him/her that he had a source of supply for illegal firearms. PROVETTE DE FARIA sent CW-1 photographs of two handguns, and a box of ammunition, that he had available for sale. I later directed CW-1 to arrange the purchase of the firearms and ammunition from PROVETE DE FARIA.

12. On April 24, 2024, CW-1 made a controlled purchase of two (2) 9mm pistols and ammunition from PROVETTE DE FARIA in Plymouth, MA. Prior to the controlled purchase, investigators met with CW-1 at a pre-determined location to conduct a pre-operational briefing. CW-1 was equipped with electronic surveillance equipment, as well as an undercover ("U/C") vehicle, to record and monitor the transaction. Agents provided CW-1 with government funds in order to purchase the firearms and ammunition. CW-1 and the U/C vehicle were searched for contraband and currency with negative results.

13. Surveillance personnel were assigned to the area of the Home Depot parking lot in Plymouth, MA, and CW-1 was under constant surveillance by investigators during the operation. While at the Home Depot, investigators observed a black Ford Fusion (MA 5VFP11) arrive at the Home Depot lot and park next to the U/C vehicle. PROVETTE DE FARIA exited the front passenger seat of the Ford Fusion and entered the U/C vehicle. While inside of the U/C

vehicle, PROVETTE DE FARIA sold CW-1 two 9mm pistols and ammunition for $2,700 government funds.

14. CW-1 left the area and was kept under surveillance to a pre-determined location. At the pre-determined location, CW-1 provided investigators with two (2) PMFs, 9mm pistols, with no serial numbers, and 64 rounds of 9mm ammunition. CW-1 and the U/C vehicle were searched again for contraband and currency with negative results. I have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the firearms and ammunition from PROVETTE DE FARIA.

### *MAY 17, 2024 – DRUG BUY FROM PROVETTE DE FARIA*

15. On May 17, 2024, CW-1 arranged to purchase 50 grams of fentanyl from PROVETTE DE FARIA in Hyannis, MA. Prior to the controlled purchase, investigators met with CW-1 at a pre-determined location to conduct a pre-operational briefing. CW-1 was equipped with electronic surveillance equipment, as well as a U/C vehicle, to record and monitor the transaction. Agents provided CW-1 with government funds to purchase the drugs. CW-1 and the U/C vehicle were searched for contraband and currency with negative results.

16. Surveillance personnel were assigned to the area of the Home Depot parking lot in Hyannis, MA, and CW-1 was under constant surveillance by investigators during the operation. At the Home Depot, investigators observed the same black Ford Fusion (MA 5VFP11) arrive at the Home Depot lot and park next to the U/C vehicle. PROVETTE DE FARIA exited the front passenger seat of the Ford Fusion and got into the U/C vehicle. While inside of the U/C vehicle, PROVETTE DE FARIA sold CW-1 a quantity of fentanyl for $1,500.

17. CW-1 left the area and was kept under surveillance to a pre-determined location. At the pre-determined location, CW-1 provided investigators with a bag of individually packaged

knotted plastic baggies containing a brownish powder, consistent with fentanyl. CW-1 and the U/C vehicle were searched again for contraband and currency with negative results. I have reviewed the recordings of the transaction, which confirmed CW-1's account that CW-1 purchased the fentanyl from PROVETTE DE FARIA.

18. The drug evidence was subsequently sent to the Drug Enforcement Administration ("DEA") laboratory in New York, NY, for analysis. The analysis identified the presence of fentanyl and xylazine in the substance and a net weight of 40.1 grams.

### CW-1 COMMUNICATIONS WITH PROVETTE DE FARIA

19. During late May of 2024, CW-1 informed agents of communications with PROVETTE DE FARIA. CW-1 reported that PROVETTE DE FARIA sent photographs and videos of firearms that were advertised as available for sale. I have reviewed the photographs and videos sent to CW-1 and observed these media files to depict a suspected AR-15 style rifle, as well as commercially manufactured pistols and PMFs.

20. CW-1 reported to agents that PROVETTE DE FARIA stated he had a firearm source of supply in North Carolina and could acquire a rifle and two pistols for sale. CW-1 reported that PROVETTE DE FARIA advertised a price of $2,200 for the rifle, and $1,200 for each of the pistols. On June 4, 2024, CW-1 informed agents that PROVETTE DE FARIA told him/her that his associates were traveling to North Carolina to acquire the firearms. On June 6, 2024, CW-1 informed agents that PROVETTE DE FARIA told him/her that his associates were unable to acquire the firearms.

21. As part of this investigation, I have consulted with an ATF Industry Operations Investigator in the Boston Field Division, who has queried ATF's Firearms Licensing System

("FLS)." Based on a review of relevant records, Talles PROVETTE DE FARIA does not possess a federal firearms license ("FFL").

## **CONCLUSION**

22.  In light of the above, there is probable cause to believe that PROVETTE DE FARIA has committed violations of federal law as set forth above.

                                                                                        _Eric Mercer /by Paul G. Levenson_
                                                                                        Eric Mercer
                                                                                        Special Agent, ATF

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this __18th__ day of September, 2024